J-S38034-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| HARRY ECHEVAVIA | |
| Appellant | No. 3001 EDA 2016 |

Appeal from the Judgment of Sentence August 30, 2016
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): CP-51-CR-0013153-2015

BEFORE: GANTMAN, P.J., SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JULY 25, 2017**

Appellant, Harry Echevavia, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas after he was found guilty of possession with intent to deliver[1] and knowing and intentional possession.[2]  Appellant challenges the denial of his motion to suppress physical evidence.  We affirm.

The trial court summarized the facts and procedural posture of this case as follows:

> At the suppression hearing, Philadelphia Police Officer [Joseph] McCauley testified that on November 23, 2015 at 5:10 p.m. he and his partner, Officer [Patrick] Banning, were assigned to an "overtime detail specially to target

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

[2] 35 P.S. § 780-113(a)(16).

open air drug sales" in addition to "part one . . . crimes" which included "shooting, robberies, rapes, burglaries, car thefts [and] stolen autos." [Officer McCauley] indicated that his tour of duty took him to the 200 block of East Stella Street which is "considered the highest drug area" in Philadelphia. Officer McCauley was not conducting surveillance on [Appellant] on the night in question.

On the night in question, [Officers] McCauley and Banning were patrolling in a stealth marked vehicle with no dome lights and subdued decals. [Officer] McCauley was operating the police vehicle and used a "stealth manner" to turn the wrong way onto Stella Street, a one-way street.

From 40 to 60 feet away, [Officer] McCauley observed [Appellant] engaged in what he believed to be a drug sale. The police vehicle traveled 10 to 15 miles per hour and did not have its headlights illuminated as it traveled down Stella Street.

After [Officer] McCauley observed the suspected drug sale, [Officers] McCauley and Banning immediately exited the vehicle next to [Appellant] and the buyer. [Both officers were in full uniform.] At this point, [Appellant] dropped fourteen blue packets, consistent with heroin packaging, onto the highway. [Officer] McCauley then placed [Appellant] under arrest.

Upon cross examination, [Officer] McCauley reiterated that he was out of the police vehicle when [Appellant] dropped the items to the ground. Further, [Officer] McCauley testified that [Appellant] dropped the packets after he looked in the direction of [Officers] McCauley and Banning.

Trial Ct. Op., 11/9/16, at 2-3 (record citations and footnote omitted).

On February 12, 2016, Appellant filed a motion to suppress, alleging he was stopped without reasonable suspicion and arrested without probable cause. Following a hearing on April 29, 2016, the trial court denied the suppression motion and concluded that Appellant was not seized when he

abandoned the narcotics. *See* N.T., 4/29/16, at 61. Appellant immediately proceeded to a nonjury trial at which he was found guilty of possession and possession with intent to deliver a controlled substance. On August 30, 2016, the trial court sentenced Appellant to one and one half to three years' imprisonment for possession with intent to deliver.

Appellant timely appealed and complied with the trial court's order to submit a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court filed a responsive opinion and concluded that "no coercion took place before [Appellant] voluntarily abandoned the heroin packets, and the recovery of the abandoned heroin packets constituted sufficient probable cause to arrest [Appellant]." Trial Ct. Op. at 10. This appeal followed.

Appellant presents the following question for review:

> Did not the trial court err in denying the motion to suppress physical evidence discarded by [A]ppellant where it was forcibly abandoned after an illegal stop made without probable cause in conflict with the Pennsylvania and United States Constitutions?

Appellant's Brief at 3.

Appellant argues he was subject to an investigative detention without reasonable suspicion when the police officers exited their vehicle next to him. Appellant asserts a detention arose when "the officers were in uniform in a marked car, going down the wrong way of a one way street . . . [and] pulled up directly adjacent to [him]." *Id.* at 9. Thus, Appellant contends he abandoned the heroin during an unlawful seizure and that the trial court

- 3 -

erred in refusing to suppress the physical evidence against him. ***See id.***

(discussing ***Commonwealth v. Matos***, 672 A.2d 769 (Pa. 1996)). We

disagree.

Our standard of review is as follows:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

***Commonwealth v. Jones***, 121 A.3d 524, 526-27 (Pa. Super. 2015)

(citation omitted), *appeal denied*, 135 A.3d 584 (Pa. 2016).

> In Pennsylvania, interactions between the police and members of the public are divided into three categories: 1) mere encounters, which are characterized by the fact that the suspect has no official compulsion to stop or respond to the police, and need not be supported by any level of suspicion; 2) investigative detentions, in which suspects are required to stop and submit to a period of detention . . . and must be supported by reasonable suspicion; and 3) arrests, or custodial detentions, which must be supported by probable cause. If a suspect is subjected to an investigative detention that is not supported by reasonable suspicion, and the suspect abandons a piece of evidence

> that is later recovered by the police, that evidence generally ought to be suppressed.

*Commonwealth v. Astillero*, 39 A.3d 353, 357-58 (Pa. Super. 2012) (citations omitted).

"To determine if an interaction rises to the level of an investigative detention . . . the court must examine all the circumstances and determine whether police action would have made a reasonable person believe he was not free to go and was subject to the officer's orders." *Commonwealth v. Guzman*, 44 A.3d 688, 693 (Pa. Super. 2012) (citation and quotation marks omitted). Factors relevant to this determination include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Commonwealth v. Guess*, 53 A.3d 895, 900 (Pa. Super. 2012) (citation omitted).

In *Commonwealth v. Byrd*, 987 A.2d 786 (Pa. Super. 2009), a caravan of marked police vehicles drove down the wrong way of a one-way street and approached the defendant. *Id.* at 788. The officers drove at a low speed and did not activate their lights or sirens. *Id.* An officer in the second or third vehicle in the caravan was fifty to sixty feet from the defendant when he observed the defendant discard an item under a parked car. *Id.* The officer detained the defendant and recovered a handgun from underneath the parked car. *Id.* The trial court granted the defendant's

suppression motion, determining that the "caravan of three to four police cars driving the wrong way down a one-way street . . . is enough of a show of force to rise to forced abandonment." *Id.* at 789 (citation omitted). The Commonwealth appealed.

The *Byrd* Court reversed, concluding that the defendant voluntarily abandoned the handgun during a mere encounter. *Id.* at 794. The Court emphasized that there was "no indication that the cruisers' lights or sirens were activated[,] and the cruisers were not traveling at high speed." *Id.* at 793. Additionally, there was "no evidence that the police showed any interest in [the defendant] or made any statements to him prior to [the defendant] discarding the weapon." *Id.* (citation omitted).

In *Guess*, a police detective in plain clothes and an unmarked car was investigating a report of an attempted burglary at an apartment complex. *Guess*, 53 A.3d at 898. While uniformed officers entered the apartment complex, the detective remained in the parking lot, where he observed the defendant and another male emerge from between two of the apartment buildings. *Id.* The males matched the description of the suspects' race and clothes. *Id.* The detective drove his unmarked vehicle to the defendant, identified himself as a police officer, and asked the defendant and his cohort questions about their identities and residence. *Id.* The detective then got out of his vehicle and asked to speak with them. *Id.* During this interaction, the defendant dropped a credit card, which did not belong to

him. *Id.* The detective thereafter patted the defendant down and recovered further evidence of a burglary. *Id.* Following his conviction, the defendant filed a Post Conviction Relief Act[3] petition, which asserted, *inter alia*, that trial counsel was ineffective for failing to seek suppression of the evidence against him. *Id.* at 899. The PCRA court denied the petition, and the defendant appealed. *Id.*

The **Guess** Court affirmed concluding that Appellant's underlying suppression claim lacked arguable merit. *Id.* at 902. Specifically we concluded that "the initial approach and questioning by [the detective] was a mere encounter." *Id.* at 901. We noted that the detective approached the defendant alone, he did not verbally command the defendant to stop, and he did not obstruct the defendant's movement. *Id.* We further noted the absence of any circumstances that would indicate a seizure, such as the threatening presence of several officers, the display of a weapon, the physical touching of the citizen, or the use of strong language or tone of voice. *Id.* at 900; *see also Commonwealth v. Riley*, 715 A.2d 1131, 1135-36 (Pa. Super. 1998) (concluding mere encounter occurred where arresting officer, who wore blue jeans, windbreaker and T-shirt bearing police emblem and unit name on the back, pulled unmarked vehicle next to defendant and exited vehicle).

---

[3] 42 Pa.C.S. §§ 9541-9546.

Instantly, the officers drove down the wrong way of a one-way street towards Appellant. However, this fact did not amount to a detention. **See Byrd**, 987 A.2d at 788. Moreover, although the officers pulled their "stealth-marked" vehicle next to Appellant, they did so without impeding his movement or issuing a signal for him to stop. **See Guess**, 53 A.3d at 901; **Byrd**, 987 A.2d at 788. Lastly, although the officers exited the vehicle in full uniform, they did not command Appellant to stop or ask him any questions before he abandoned the contraband. **See Guess**, 53 A.3d at 898, 901. Indeed, there is no indication in the record that the officers spoke to Appellant before he abandoned the contraband. We conclude that the totality of the circumstances presented in this case was not as intrusive as those discussed in **Byrd** or **Guess**.[4] Therefore, we discern no basis to disturb the trial court's conclusion that Appellant abandoned the contraband during a mere encounter.[5] **See Jones**, 121 A.3d at 526-27.

Judgment of sentence affirmed.

---

[4] Appellant cites no authority for the proposition that the totality of the circumstances of this case constitutes a seizure.

[5] In any event, we discern no merit to Appellant's contention that the officers lacked reasonable suspicion to believe that Appellant had engaged in a narcotics transaction. **See Commonwealth v. Thompson**, 985 A.2d 928, 936-37 (Pa. 2009) (concluding probable cause existed to arrest defendant after experienced narcotics officer observed exchange of currency for small object and Commonwealth established sufficient nexus between officer's experience, his observations, and his belief that he witnessed a drug transaction).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/25/2017